UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
RAHEEM EDWARDS,

       Plaintiff,       **MEMORANDUM DECISION**
                 **AND ORDER**

                  13-CV-4345 (JS) (JMW)

    -against-

NASSAU COUNTY CORRECTIONAL CENTER,
NASSAU COUNTY SHERIFF'S DEPARTMENT,
OFFICER DESTAFANO, SERGEANT MCNAMARA,
SERGEANT O'BRIEN, OFFICER CAPRIO,
CORPORAL ANDERSON, OFFICER PICOLLI,

       Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

Raheem Edwards, *Appearing Pro Se*
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562


Ian Bergstrom, Esq.
**Deputy County Attorney**
Office of County Attorney
County of Nassau
One West Street
Mineola, New York 11501
*Attorney for Defendants*


**WICKS,** Magistrate Judge:

  *Pro se* Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 and the 8th Amendment, alleging that during his incarceration, without any provocation, Defendants used excessive force against him, denied him medical treatment, denied him basic hygiene, and stole/destroyed his personal property. (DE 1.) Before the Court is Defendants' motion for a protective order, which is based on various objections to producing the Internal Affairs Bureau investigation and report related to the Defendants' alleged use of excessive force. (DE 68.)

**BACKGROUND**

On October 2, 2014, Plaintiff served document demands on Defendants, including documents that constitute an Internal Affairs Bureau investigation of the subject incident ("IAU Report").[1] (DE 32 at 3-4). On January 30, 2015, Defendants submitted a status report to the Honorable A. Kathleen Tomlinson, asserting multiple objections to producing the IAU report. (DE 36.) On February 10, 2015, the parties appeared for a Conference before Judge Tomlinson at which Defendants confirmed that an investigation was undertaken and completed by the Internal Affairs Bureau and that an Internal Affairs Report was prepared. (DE 37.) Judge Tomlinson ordered Defendants "to provide the Court with a copy of the IAB Report within one week for an *in camera* inspection, at which time the Court will make a determination of what information, if any, from the IAB Report should be provided to the plaintiff." (*Id.*) The IAU Report was subsequently disclosed to the Court for an *in camera* review to assess Defendants' objections to production, and this case was recently reassigned to the undersigned prior to Judge Tomlinson's completion of the review. (Electronic Order dated November 20, 2021.) Since the time the motion was made and the referral to the undersigned, the law changed. Accordingly, on December 3, 2021, the parties appeared for a status conference at which the undersigned directed Defendants to file a supplemental letter as to their objections for disclosing the IAU report.[2] (DE 62.) On December 10, 2021, Defendants filed a letter motion seeking a protective order to avoid production of the IAU report. (DE 68.) Alternatively, Defendants request that the Court "impose safeguards to prevent review of the departmental documentation at issue for public review and other inmates incarcerated" with Plaintiff. (*Id.*)

---

[1] Defendants refer to the Internal Affairs Bureau investigation and report as an "IAU" Report. The Honorable A. Kathleen Tomlinson previously referred to the Internal Affairs Bureau investigation and report as an "IAB" Report.

[2] On February 10, 2015, Judge Tomlinson noted that once the Court has reviewed and made a determination regarding the IAU report, the Court will set a schedule for summary judgment (i.e., notice to *pro se* litigant under Local Rule 56.2. (DE 37.) At the December 3, 2021 Conference, this Court set a deadline of February 1, 2022, as the final date by which parties shall take the first step in summary judgment motion practice. (DE 62.)

For the reasons that follow, Defendants' motion for a protective order is granted in part and denied in part, and accordingly, Defendants are hereby ordered to produce the IAU report, with limited redactions and pursuant to a confidentiality stipulation, as fully set forth below.

## STANDARD

Rule 26(c) affords protections for abusive or embarrassing discovery, providing that "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c)(1); *see Gordon v. Target Corp.*, 318 F.R.D. 242, 246 (E.D.N.Y. 2016) ("[T]he touchstone for determining whether to issue a protective order under Rule 26(c) lies, in the first instance, on a party's ability to establish good cause"). The burden is on the party seeking issuance of the order to show "good cause" through "particular and specific facts" as opposed to "conclusory assertions." *Rofail v. United States*, 227 F.R.D. 53, 54–55 (E.D.N.Y. 2005). "If the movant establishes good cause for protection, the court may balance the countervailing interests to determine whether to exercise discretion and grant the order." *Id.* at 55.

"Because of the interest in broad discovery, the party opposing the discovery of relevant information, whether through a privilege or protective order, bears the burden of showing that based on the balance of interests the information should not be disclosed." *Fowler-Washington v. City of New York*, No. 19-CV-6590(KAM)(JO), 2020 WL 5893817, at *3 (E.D.N.Y. Oct. 5, 2020) (internal quotation and citation omitted).

## DISCUSSION

Defendants withdrew their prior objection based on deliberative process privilege and now assert objections based upon the following three grounds: (1) the legislative intent regarding the repeal of New York Civil Rights Law § 50-a and Federal Rule of Civil Procedure 26(b)(1); (2) law enforcement privilege; and, (3) New York Public Officers Law § 87. (DE 68 at 2.)

      i.     ***The Legislative Intent Regarding the Repeal of <u>New York Civil Rights Law § 50-a, and Fed. R. Civ. P. 26(b)(1)</u>***

Historically, New York Civil Rights Law § 50-a prohibited public access to police officers', corrections officers', firefighters', firefighters/paramedics', and certain peace officers' personnel records that are used to evaluate job performance regarding continued employment or promotion. N.Y. Civ. Rights Law § 50-a (McKinney 2019), *repealed by* L 2020, ch 96, § 1. Such records were permitted for inspection or review only with express written consent of the subject individual or as mandated by a court order. *Id.* A document constitutes a personnel record under New York Civil Rights Law if the document is significant to a superior when considering continued employment or promotion. 92 N.Y. Jur. 2d *Records and Recording* § 33 (2021) (citing *Patrolmen's Benevolent Assoc. of City of N.Y. v. De Blasio*, 171 A.D.3d 636, 636-37, 101 N.Y.S.3d 280, 281 (1st Dep't 2019); *Hughes Hubbard & Reed LLP v. Civilian Complaint Review Bd.*, 53 Misc. 3d 947, 954, 41 N.Y.S. 3d 369, 376 (Sup. Ct. Kings Cnty. 2016) (holding that personnel records include documents with personal and employment-related information that are clearly relied on to evaluate performance)).

The law was initially adopted in 1976 to prevent criminal defense lawyers from using such records in cross examination of police witnesses. Mem. in Support, S8496, L 2020 N.Y. Sess. Laws ch 96. However, lawmakers found that the evolution of § 50-a, which essentially expanded to a point of withholding any record with information about an officer's performance, offset the Freedom of Information Law's ("FOIL") goal of government transparency to the public. *Id.* The Legislature recognized that FOIL already provides those protected under § 50-a all of the necessary protections against unwarranted invasions of privacy, and that if § 50-a were repealed, courts could effectively determine whether police records are admissible at trial. *Id.*

Defendants acknowledge that the previous protections afforded by Civil Rights Law § 50-a have waned since the law was repealed on June 12, 2020. (DE 68.) However, Defendants argue that because the investigation found that the Defendants did not engage in "misconduct," production of the IAU report is not in line with the reason why section 50-a was repealed. (*Id.*) Specifically, Defendants assert that

4

disclosure of correction officer-related disciplinary records herein would not further the legislative intent of rectifying "misconduct," thus, the documents lack evidentiary value for the purpose of acquiring discoverable material necessary to this case. (*Id.*)

On its face, Defendants' argument appears to be a matter of relevancy as opposed to privilege. Pursuant to Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, 11 Civ. 5088, 2016 WL 616386 (RMB)(HBP), at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). This standard is applied more liberally during discovery than at trial. *Id.* Proportionality goes "hand-in hand" with relevance. *New Falls Corp. v. Soni*, CV 16-6805 (ADS) (AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That is, the more relevant the information sought is, the less likely the Court will find the subject discovery disproportionate. *Id.* (citation omitted). "The party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Barbara v. MarineMax, Inc.*, No. 12-CV-368 (ARR)(RER), 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) (quotation omitted).

Here, the report entails the investigation of the exact incident that is the subject of this lawsuit and is therefore, proportional and relevant to Plaintiff's claims. "Disciplinary records involving complaints of a similar nature, whether substantiated or unsubstantiated, could lead to evidence that would be admissible at trial and thus, are discoverable." *Frails v. City of New York*, 236 F.R.D. 116, 117 (E.D.N.Y. 2006). Defendants are entitled to object to the records on relevancy or admissibility grounds at a later time, but Plaintiff is clearly entitled to the discovery at this juncture.

5

Defendants also argue that the repeal of § 50-a has no bearing on the subject discovery issue because § 50-a did not govern discovery in federal cases. (DE 68 at 4-5.) While Defendants are correct, this argument actually cuts against their position because the federal discovery rules are broader.

"New York state law does not govern discoverability and confidentiality in federal civil rights actions." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). Issues of privilege in federal civil rights cases are analyzed pursuant to federal law, and the state rule is one factor to consider by the court in resolving a discovery dispute. *Id.* at 187-88. Thus, the repeal of § 50-a, a state law, does not govern the Court's analysis in this federal civil rights action. Rather, Rule 26(b)(1) governs discoverability of the subject IAU report. *See Saaverdra v. City of N.Y*, 19 Civ. 7491 (JPC), 2021 WL 104057, at *2 (S.D.N.Y. Jan. 12, 2021) (holding that plaintiff was entitled to portions of officers' disciplinary histories that involved allegations similar to those in complaint based on Rule 26(b)(1), and finding that repeal of § 50-a, a state law, did not affect such determination); s*ee also Fowler-Washington v. City of N.Y.*, No. 19-CV-6590(KAM)(RER), 2020 WL 7237683, at *3 (E.D.N.Y. Dec. 9, 2020) (acknowledging that New York's repeal of section 50-a allows the public to access certain NYPD records in the context of a Freedom of Information Law request that they were not previously entitled to access, but noting Rule 26 permits plaintiff "access to more documents than he would as a member of the public, even after the repeal of Section 50-a"). Thus, Plaintiff here is entitled to the IAU report regarding the alleged excessive force investigation regardless of § 50-a's repeal.

      ii.    **<u>Law Enforcement Privilege</u>**

The law enforcement privilege "is designed not only to facilitate investigations, but also to protect individuals whose reputation may be damaged by disclosure of investigative leads or statements from witnesses developed during the investigation*."* *In re Dep't of Investigation of City of N.Y.*, 856 F.2d 481, 486 (2d Cir. 1988). The party asserting law enforcement privilege bears the burden of showing that the privilege applies to the subject documents. *Moroughan v. Cnty. of Suffolk*, CV 12-512 (JFB) (AKT), 2018 U.S. Dist. LEXIS 242359, at *14 (E.D.N.Y. Feb 5, 2018) (citing *In re City of N.Y.*, 607 F.3d 923,

948 (2d Cir. 2010). "A threshold showing of privilege must explain the reasons for nondisclosure with particularity, so that the court can make an intelligent and informed choice as to each requested piece of information," which is done by showing "that the documents contain information that the privilege is intended to protect." *Id.* (internal quotations and citations omitted). The law enforcement privilege includes: (1) information pertaining to law enforcement techniques and procedures; (2) information that undermines the confidentiality sources; (3) information that would endanger witnesses and law enforcement personnel; (4) information that would undermine the privacy of individuals involved in an investigation; or, (5) information that would seriously impair the ability of law enforcement agencies to conduct future investigations. *Id.* at 14.

If established, the law enforcement privilege is a "qualified" privilege, and the court must weigh the public interest in nondisclosure against the need of a particular litigant for access to the privileged information. *Conte v. Cnty. of Nassau*, No. CV 06-4746(JFB)(ETB)., 2009 WL 1362784, at *7 (E.D.N.Y. May 15, 2009) (citation omitted). "To lift the privilege, the party seeking the information must show: (1) that the suit is non-frivolous and brought in good faith; (2) that the information sought is not available through other discovery or from other sources; and (3) that the party has a compelling need for the privileged information." *Moroughan*, 2018 U.S. Dist. LEXIS 242359, at *15 (citation omitted).

Here, Defendants merely recite cases that discuss the purpose behind the privilege without specifically showing the harm that is likely to be encountered if disclosure is permitted. (DE 68.) Defendants blankly assert that, "After review of the documentation at issue, the paperwork lucidly evidences the "techniques and procedures" as to which the Department of the Nassau County Sheriff and IAU perform the departmental investigations to determine whether wrongdoing occurred." (*Id.*) Defendants do not point to a single specific page to establish why or how the law enforcement privilege applies. (*Id.*) To "sustain the privilege, a party must make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted, and they may not rely simply on generalized reiterations of the policies underlying the privilege." *MacNamara v. City of N.Y.*, No. 04 Civ. 9216(KMK)(JCF)., 2007 WL 1169204, at *5 (S.D.N.Y. Apr. 20, 2007) (internal

quotation and citation omitted). Here, based on the generalized reiterations of the policies underlying privilege, Defendants fail to meet their burden. *See Conte*, 2009 WL 1362784, at *8 (ordering purported privileged documents to be produced because Defendants put forth "nothing more than a recitation of the law enforcement privilege" without any specifics "as to how and why disclosing these documents would jeopardize or interfere with current or future investigations and prosecutions").

Notwithstanding Defendants' failure to establish that the IAU report falls under the law enforcement privilege, the Court's *in camera* review of the IAU report revealed that the following Bates stamped pages shall be omitted or redacted as they contain other inmates' names and cell identification information: 000090-000091.

    iii.    ***New York Public Officers Law***

Defendants reference, without argument, New York Public Officers Law §§ 89(2)(a) and 89(2)(c)(i), which permits deleting identifying details from disclosed records to avoid unwarranted invasion of privacy. *See* N.Y. Pub. Off. Law § 89 (McKinney through L.2021). The Court finds that it is appropriate here to redact officers' private information found within the IAU report. Even under Rule 26's broad discovery obligations, there is no right to private information such as social security numbers, home addresses, and names of family members "that is not otherwise relevant to an officer's performance on the job." *Fowler-Washington v. City of New York*, No. 19-CV-6590(KAM)(JO), 2020 WL 5893817, at *4 (E.D.N.Y. Oct. 5, 2020). "The recent repeal of Section 50-a does not alter this." *Id.* Accordingly, pursuant to N.Y. Pub. Off. Law §89(2-b), Defendants shall redact all officers' social security numbers, home addresses, personal telephone numbers, personal email addresses, and medical histories within the subject IAU report.[3]

---

[3] The undersigned notes that the IAU Report contains records specific to Officer DeStafano's purported injuries resulting from the subject incident, and that this ruling is in line with Judge Tomlinson's February 10, 2015 Order, wherein she directed Defendants "to turn over the medical records specifically directed to the alleged injury suffered by Officer DeStefano as a result of the incidents underlying the claims in this case. However, those records are to be redacted to exclude any information regarding date of birth, social security number, prior medical history, etc." (DE 37.)

The late-Honorable Jack B. Weinstein set forth clear guidelines regarding confidentiality of such documents in federal civil rights actions, noting that parties are expected to stipulate to appropriate protective orders that limit disclosure of the discovery to counsel or counsel and client. *King*, 121 F.R.D. 180, 198. Even since the repeal of § 50-a, courts in this district have held that such records are subject to confidentiality orders, although the scope of those confidentiality orders has differed. *Compare Miehle-Kellog v. Cnty. of Suffolk*, CV 19-4943(DRH)(SIL), DE 17 (E.D.N.Y. Feb. 9, 2021) (court so-ordered confidentiality stipulation encompassing any document identified as Suffolk County Police Department Personnel files, Internal Affairs Reports, Autopsy Reports, Medical Records of plaintiff and any Suffolk County Police Officer, unless the Court determined such documents were not entitled to confidentiality) *with Fowler-Washington v. City of N.Y.*, 19-CV-6590(KAM)(RER), 2020 WL 7237683, at *5 (E.D.N.Y. Dec. 9, 2020) (holding that protective ordered entered into was appropriately limited because the order "provides that materials available to the public are not confidential, [and] Plaintiff is required to keep confidential the documents and records that are not otherwise available to the public under New York law, and personal information of third parties (though both categories of information can be shared with those who are preparing Plaintiff's case, or witnesses at depositions)") *and Walls v. City of N.Y.*, 19 Civ. 337 (RPK) (VMS), 502 F. Supp. 3d 686, 690 (E.D.N.Y. 2020) (referencing confidentiality stipulation court previously entered (ECF No. 29) wherein Internal Affairs Bureau documents among other disciplinary and investigative documents and medical records were deemed not confidential "to the extent, and only to the extent, that they are: (a) obtained by Plaintiffs from sources other than Defendants, or (b) are otherwise publicly available.").[4] Here, the Court finds that the latter approach is appropriate in light of the repeal of § 50-a and based on the within findings that Defendants have failed to establish that the IAU is otherwise privileged.

---

[4] The *Miehle-Kellog v. County of Suffolk* matter (19-CV-494) was re-assigned to the undersigned on May 13, 2021. (Electronic Order dated May 13, 2021.)

## **CONCLUSION**

Based upon the foregoing, the motion for a protective order is granted in part and denied in part as follows:  Defendants are hereby directed to produce the IAU report -- redacted consistent with this order regarding other inmates' identifying information and the enumerated identifying details of the corrections' officers -- to *pro se* Plaintiff and to file proof of service on ECF on or before February 11, 2022. The parties are hereby directed to execute and file an appropriately tailored confidentiality stipulation for this Court's approval on or before January 31, 2022.

Dated: Central Islip, New York
January 3, 2022

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge