UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAHEEM EDWARDS,

                Plaintiff,

      -against-

OFFICER DESTAFANO, SERGEANT MCNAMARA,
SERGEANT O'BRIEN, OFFICER CARPIO,
CORPORAL ANDERSON, CORPORAL SCHNEIDER,
AND OFFICER PICOLLI,

                Defendants.
------------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

13-CV-4345 (JS) (JMW)

**APPEARANCES:**

Raheem Edwards
06A6473
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562
*Appearing Pro Se*

Ian Bergstrom, Esq.
Deputy County Attorney
**Office of County Attorney**
County of Nassau
One West Street
Mineola, New York 11501
*Attorney for Defendants*

**WICKS,** Magistrate Judge:

    *Pro se* Plaintiff Raheem Edwards, proceeding *in forma pauperis*, commenced this action pursuant to 42 U.S.C. § 1983 and the 8th Amendment, alleging, *inter alia*, excessive force and deliberate indifference claims. (DE 1.) Plaintiff alleges that during his incarceration, without

1

any provocation, Defendants used excessive force against him, denied him medical treatment, denied him basic hygiene, and destroyed his personal property. (DE 1.)

Before the Court is Defendants' motion for summary judgment. (DE 113.) Plaintiff resists the motion. (DE 122.) For the reasons that follow, the undersigned respectfully recommends that Defendants' motion for summary judgment (DE 113) be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Factual Background[1]

Plaintiff was an inmate at the Nassau County Correctional Center ("NCC") in East Meadow, New York. (DE 113-1 at ¶ 1.) Plaintiff alleges that on April 19, 2013, he and other inmates were waiting on a line to be let outside for recreation. (*Id*. at ¶ 2.) Plaintiff was then directed by an unidentified individual "*to step to the side*" while the other inmates proceeded to "outdoor recreation." (*Id*. at ¶ 3.) Defendant DeStefano, a former corrections officer, then stated to Plaintiff, "*[w]as that you yapping like a bitch?*" (*Id*. at ¶ 4.) DeStefano and other unnamed

---

[1] The facts set forth above are taken from the parties' respective Rule 56.1 Statements (*see* DE 113-1 (Defendants'); DE 122 (Plaintiff's)). Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Report and Recommendation means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it. Where relevant, however, the Court may also cite directly to an underlying document. The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal. *See Stewart v. Fashion Inst. of Tech.,* No. 18-CV-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record.'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03-CV-2746 (DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything."). "Additionally, to the extent [a party's] 56.1 statement 'improperly interjects arguments and/or immaterial facts in response to facts asserted by [the opposing party] without specifically controverting those facts,' the Court has disregarded [such] statement[s.]" *McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020).

2

individuals then allegedly "sprayed" Plaintiff "in the face" with "O.C. spray"[2] and were "punch[ing] [him] in the face, head, back and side" as Plaintiff attempted to respond to the question. (*Id*. at ¶ 5.)

Subsequently, NCC staff "thr[ew]" Plaintiff "into the shower area . . . until Sgt. McNamara came and escorted [him] to medical . . . and [he] was treated for open wounds on [his] right wrist, right and left knees, behind [his] left ear and under [his] right eye." (*Id*. at ¶ 6.) Plaintiff asserts that Defendants Picolli, Carpio, Sgt. O'Brien, and Corporal Anderson "denied" him medical treatment after the physical confrontation. (*Id*. at ¶ 8.) Plaintiff also asserts that he visited the medical unit directly after the physical confrontation. (*Id*. at ¶ 7.)

Plaintiff further alleges that he was "denied showers, phone calls, hygeine [sic] and toiletries." (*Id*. at ¶ 13.) Plaintiff's "propert[y] was destroyed by officers. [Such] property includes burgundy Ralph Lauren towel, 3 sets of Polo Ralph Lauren boxers and t-shirts, 3 pairs of socks, Polo Ralph Lauren washcloth, Nike shower shoes, legal work, soap and phone book." (*Id*.) Specifically, Plaintiff was deprived of a "toothbrush, toothpaste, soap, toilet tissue, towel, washcloth, [and] shower shoes" regarding the toiletries. (*Id*. at ¶ 14.) Plaintiff was transferred from the NCC to a different facility on April 26, 2013. (DE 113-8 at 33:24-34:15.)

The Department of the Nassau County Sheriff and the NCC promulgated an "Inmate Handbook." (DE 113-1 at ¶ 19.) The Inmate Handbook became effective as of April 1, 2010. (*Id*. at ¶ 20.) The Inmate Handbook "explains the rules and regulations that have been established to insure [Inmate] safety, well-being, decent living conditions, and fair treatment

---

[2] "O.C. spray" refers to oleoresin capsicum or a spray more commonly known as "pepper spray," which has been used by law enforcement to incapacitate violent or threatening subjects. *See* National Institute of Justice, *Oleoresin Capsicum: Pepper Spray as a Force Alternative*, found at https://www.ojp.gov/pdffiles1/nij/grants/181655.pdf.

while . . . in the custody of the Nassau County Sheriff's Department. [Inmates] are expected to conform . . . behavior and conduct to th[e] rules and regulations at all times during . . . incarceration." (*Id*. at ¶ 21.) The Inmate Handbook sets forth an overview of the "Grievance Procedure" applicable to the NCC. (*Id*. at ¶ 22.) Plaintiff testified that he "receive[d]" and he is familiar with the Inmate Handbook during his incarceration at the NCC. (*Id*. at ¶ 23.)

The parties sharply dispute whether Plaintiff exhibited any behavior that may have caused or contributed to the excessive force or property loss issues. (DE 113-1 at ¶¶ 12, 15; DE 122 at 2-3; DE 125-1 at ¶¶ 1-3.) The parties also dispute whether Plaintiff specified the nature of the grievances he submitted (DE 113-1 at ¶ 17; DE 122 at 2-3; DE 125-1 at ¶¶ 1-3), and whether Plaintiff submitted any grievances during his incarceration at NCC. (DE 113-1 at ¶ 16; DE 122 at 2-3; DE 125-1 at ¶ 3.) In support of his claim, Plaintiff has provided a copy of one handwritten letter stating the nature of his grievance regarding the excessive force and property issues. (DE 122 at 14.)

Investigator Sergeant Harden serves as the Investigator and Sergeant and Grievance Coordinator for the NCC. (DE 113-1 at ¶ 24.) Investigator Sergeant Harden is assigned to the "Grievance Unit" at the NCC. (*Id*. at ¶ 25.) Investigator Sergeant Harden submitted a declaration stating that after reviewing the dates of Plaintiff's confinement, that Plaintiff "did not submit grievances to the Nassau County Correctional Center challenging the alleged excessive force involving the [County]," property loss, and other conditions of confinement referenced throughout Plaintiff's complaint. (*Id*. at ¶ 27.) Plaintiff disputes whether Investigator Sergeant Harden is in fact personally "familiar with grievances that former and current inmates . . . submitted to the Nassau County Correctional Center challenging conditions of confinement after

4

review of the Inmate Grievance Unit Tracking system and The Inmate Grievance Unit Log Book." (*Id*. at ¶ 26.)

### B. Relevant Procedural Background

Plaintiff filed the initial complaint on July 29, 2013. (DE 1.) Plaintiff was granted leave to proceed *in forma pauperis*. (DE 6.) The Court *sua sponte* dismissed claims against certain defendants for a failure to state a claim. (*Id.*) Defendants filed an answer on February 11, 2014. (DE 12.) The parties stipulated to amending the complaint's caption on January 5, 2015. (DE 35.) The parties subsequently engaged in a length discovery process including various discovery disputes and periods of dormancy. On April 26, 2021, Plaintiff filed a motion to appoint counsel, which was denied on November 4, 2021. (DE 55; DE 60.) On January 3, 2022, the Court granted in part and denied in part Defendants' motion for a protective order and, *inter alia*, directed Defendants to produce the Internal Affairs Unit report with redactions consistent with the Court's order. (DE 70.)

On February 1, 2022, Defendants moved for a pre-motion conference in anticipation of filing a summary judgment motion and that request was denied on February 24, 2022 due to outstanding discovery issues. (DE 75; Electronic Order dated February 24, 2022.) The Court subsequently denied Plaintiff's motion to reconsider/motion to re-open discovery. (DE 84.) The parties advised the Court on April 21, 2022 that they had finally completed discovery. (DE 91.) On May 31, 2022, Defendants renewed their motion for a pre-motion conference. (DE 94.) The Court waived its pre-motion requirement and set a briefing schedule on Defendants' anticipated motion for summary judgment on June 24, 2022. (Electronic Order dated June 24, 2022.)

The parties filed their proposed joint pretrial order on August 18, 2022. (DE 110.) It was approved by the undersigned on August 22, 2022 and the case was returned to Judge Seybert

trial ready. (DE 110; Electronic Order dated August 22, 2022.) Defendants filed their motion for summary judgment on August 29, 2022. (DE 113.) Plaintiff filed an opposition on October 3, 2022. (DE 122.) In it, Plaintiff indicated he filed a prior opposition, however, Judge Seybert noted that this was the only opposition filed by Plaintiff, and thus, deemed it Plaintiff's opposition to Defendants' motion for summary judgment. (Electronic Order dated October 7, 2022.) Defendants filed their reply on October 25, 2022. (DE 125.) On April 27, 2023, the instant motion was referred to the undersigned by Judge Seybert for a report and recommendation. (Electronic Order dated April 27, 2023.)

## II.     LEGAL STANDARD

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the nonmovant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

The Court is to draw all reasonable inferences in favor of the non-movant, *Anderson*, 477 U.S. at 255, but the nonmovant must still do more than merely assert conclusions that are unsupported by arguments or fact. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996). The role of the court at the summary judgment stage is not to *resolve*

6

disputed issues of fact, but merely *identify* whether genuine issues of material fact exist for trial. That is, the court's function is "issue finding," not "issue resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp. 3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d Cir. 1994)).

"When a pro se litigant is involved, although the same standards for summary judgment apply, the pro se litigant should be given special latitude in responding to a summary judgment motion." *Laster v. Mancini*, No. 07-CV-8265 (DAB), 2013 WL 5405468, at *2 (S.D.N.Y. Sep. 25, 2013) (internal quotation marks omitted). It is well settled that *pro se* papers are held "to less stringent standards" than those applied to papers drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (applying a less stringent standard to a *pro se* pleading); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." (internal quotation marks and citations omitted)).

Nonetheless, a *pro se* party is required to follow the requisites of Rule 56.1. *Id.* at 2; *see also U.S. v. Pugh*, 717 F. Supp. 2d 271, 284 (E.D.N.Y. 2010) ("Nevertheless, proceeding *pro se* does not relieve the non-movant from the usual requirements of summary judgment."). Simply proceeding *pro se* "does not exempt a party from compliance with relevant rules of procedural and substantive law" nor does it "vitiate the requirement that triable issues of fact must be raised in order to defeat a summary judgment motion." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (quotation marks and citation omitted); *Miller v. New York City Health Hosp. Corp.*, No. 00-CV-140 (PKC), 2005 WL 2022016, at *3 (S.D.N.Y. Aug. 22, 2005) (citation omitted). Thus, "a pro se party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a

motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

### III.    DISCUSSION

#### A.    *Exhaustion of Administrative Remedies*

Defendants' motion for summary judgment is premised on Plaintiff's failure to exhaust his administrative remedies rendering his claims barred by the Prison Litigation Reform Act ("PLRA"). (DE 113-9 at 6-7.)  Here, the federal vessel for Plaintiff's claims is Section 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

"[S]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Schuloff v. Queens Coll. Found., Inc.*, 165 F.3d 183, 184 (2d Cir. 1999) (internal quotation marks omitted).  A plaintiff asserting a section 1983 claim must establish that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).  A section 1983 excessive force claim requires establishing that "the force used was excessive or unreasonable in light of the circumstances." *Williams v. City of Mount Vernon*, 428 F. Supp.2d 146, 157-58 (S.D.N.Y. 2006).

Pursuant to the PLRA, prisoners cannot bring an action under section 1983 or any federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

"The Supreme Court and the Second Circuit have long held that the PLRA establishes a mandatory exhaustion regime that forecloses judicial discretion over an unexhausted claim." *Senear v. Mininni*, No. 21-CV-11131 (NSR), 2023 WL 4422805, at *2 (S.D.N.Y. July 10, 2023) (citing *Ross v. Blake*, 578 U.S. 632, 641 (2016)). Notably, proper exhaustion occurs only where "an inmate appeals to the highest procedure level possible and receives a final decision regarding their grievance." *Id*. (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)).

"The PLRA exhaustion requirement 'applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.' Prisoners must utilize the state's grievance procedures, regardless of whether the relief sought is offered through those procedures." *Angulo v. Nassau County*, 89 F. Supp. 3d 541, 549 (E.D.N.Y. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009)). It is undisputed that Plaintiff is a former "prisoner" within the meaning of the PLRA. *See* 42 U.S.C.S. § 1997e(h).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. (quoting *Woodford*, 548 U.S. at 90-91). Thus, courts "look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Id*. (quoting *Espinal*, 558 F.2d at 124.) A defendant bears the burden of establishing a plaintiff's failure to exhaust administrative remedies since it is considered an affirmative defense. *Hubbs v. Suffolk County Sheriff's* Dept, 788 F.3d 54, 59 (2d. Cir. 2015). A defendant establishes this "by pointing to legally sufficient source[s] such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." *Id*. (internal quotation marks omitted). Even where a

defendant meets this burden, "administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.*

The threshold question of exhaustion under the PLRA is for the court to decide, even if there exist disputed issues of fact. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011) ("[T]he presence of disputed material facts [does not] convert[] exhaustion into a jury issue."); *Abdur-Rahman v. Terrell*, No. 10-CV-3092 (DLI) (LB), 2012 WL 4472119, at *5 (E.D.N.Y. Sept. 25, 2012) ("[Determining whether an inmate has exhausted his remedies is a threshold matter for the court to decide, even where there is a disputed issue of fact." (citing *Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011)); *Aguiar v. Murray*, No. 11-CV-3944 (DLI) (LB), 2014 WL 1330739, at *4 (E.D.N.Y. Apr. 1, 2014) (same); *Abernathy v. Strada*, No. 12-CV-6072 (DLI) (VVP), 2015 WL 997980, at *3 (E.D.N.Y. Mar. 6, 2015) (same).

Plaintiff received, and was familiar with, the Inmate Handbook during his incarceration. (DE 113-1 at ¶¶ 20, 23; DE 113-8 at 39:13-21.) The Inmate Handbook details numerous ways a prisoner can report the use of excessive force, outlines the general grievance procedure, and explains the appeals process. (DE 113-6 at 3-5.) The Inmate Handbook notes the following grievance procedure:

> The Grievance Procedure dictates that an inmate must fill out a grievance form within five (5) days of the act or occurrence leading to the grievance and within five (5) business days of receipt of a grievance, the Grievance Coordinator will issue a written finding. If the inmate does not agree with the decision, the Inmate Handbook details the process for the inmate to appeal, first to the Chief Administrative Officer, then to the New York State Commission of Correction's Citizens Policy and Complaint Review Council. The Inmate Handbook also explicitly states that an inmate may file a grievance if the inmate believes that corrections staff have used excessive force.

10

*Trotman v. Sposato*, No. 18-CV-2711 (GRB)(LB), 2021 U.S. Dist. LEXIS 259052, at *15 (E.D.N.Y. Aug. 24, 2021) (citations omitted) (describing the same NCC Inmate Handbook's Grievance Procedure at issue here).

Plaintiff was required to exhaust the procedures set forth in the Inmate Handbook. (*See* DE 113-6 at 3-5.) Plaintiff argues he did so by submitting two grievances, while Defendants argue that there is no record of any such submissions. In support of his position, Plaintiff provided a copy of one of the grievances allegedly submitted (DE 122 at 14), while Defendants submitted a declaration by Investigator Sergeant Harden stating that there were no grievances submitted by Plaintiff during the dates of his incarceration (DE 113-7).

Upon review of the record, there are no issues of fact for trial on the issue of whether Plaintiff failed submit grievances, that is, he did not and also did not follow the grievance procedures. Each issue is addressed below.

  i. **Failure to Submit Grievances**

Investigator Sergeant Harden's declaration reflects that Plaintiff "did not submit grievances to the Nassau County Correctional Center challenging the alleged excessive force involving the [County]," property loss, and other conditions of confinement referenced throughout Plaintiff's complaint. (DE 113-7; DE 113-1 at ¶ 27.) Plaintiff's proffered evidence does not lead to a contrary conclusion. There are several material inconsistencies in Plaintiff's version of events regarding the grievances he allegedly submitted. Even trying to reconcile the inconsistencies does not establish that he filed any grievances.

First, Plaintiff claims to have handwritten a grievance and placed it in a marked grievance box in his housing unit on April 20, 2023 and on April 23, 2023. (DE 122 at 6.) It was allegedly the lack of response to the first grievance that prompted Plaintiff to write the second. (DE 122 at 6.) The "Chronological Order of Events" portion of Plaintiff's complaint is

11

attached to Plaintiff's response to Defendants' motion for summary judgment. (DE 122 at 16-17.) There, Plaintiff only notes that he submitted a grievance on April 22, 2023 and does not mention having submitted a grievance on April 26, 2013. (DE 122 at 16-17.) In his opposition memorandum, Plaintiff mentions that he placed the grievances "in the box on April 22, 2013, and April 25, 2013." (DE 122 at 7.) And during his deposition, Plaintiff was asked whether he submitted a grievance with respect to the incidents alleged in his complaint, and he only referenced one grievance written on April 20, 2013. (DE 113-8 at 31:21-33:20.)

Second, the one handwritten grievance provided by Plaintiff is dated April 20, 2023. (DE 122 at 14.) This document appears to be a scanned copy of a paper addressed to the "Grievance Office" about "Assault, Loss of Property." (DE 122 at 14.) In this letter, Plaintiff notes not only the excessive force incident but also the loss of his property, which he writes he learned about from one of the officers. *Id*. However, Plaintiff's chronology notes that he discovered his property loss on April 26, 2023, the date he was being discharged. (DE 122 at 16-17.) Thus, this letter includes at least some information that, according to Plaintiff's chronology, was not discovered until six days later.

Third, Plaintiff has not provided or alleged to have received a "grievance receipt," which according to the Inmate Handbook is "issued for each grievance received by the Grievance Unit," (*see* DE 113-6 at 5). *See Tucker v. Demarco*, No. 12-CV-4683 (JFB) (GRB), 2014 WL 4175801, at *6 (E.D.N.Y. Aug. 19, 2014) ("The purported grievance is written on a sheet of notebook paper and bears no markings to indicate that it was filed with or received by the correctional staff."); *Butler v. Viscusi*, No. 11-CV-4844 (JFB) (WDW), 2014 WL 1407262, at *8 (E.D.N.Y. Apr. 11, 2014) ("[P]laintiff cannot rely on the copies of the grievances submitted with his opposition, because there is no record of them having been filed with SCCF."). This further

12

renders Plaintiff's handwritten grievance suspect. *See Harris v. Loverde*, No. 08-CV-6069 (CJS), 2011 WL 5080089, at *4 (W.D.N.Y. Oct. 26, 2011) (finding the, *inter alia*, unnotarized "copy" of a grievance, of which there was no record, to be "unreliable").

These inconsistencies coupled with Investigator Sergeant Harden's affidavit stating that no grievances were submitted, lead the Court to the inescapable conclusion that Plaintiff failed to submit grievances in accordance with the formal grievance procedure outlined in the Inmate Handbook. Plaintiff has not sustained his burden to establish grievances were in fact submitted.

Moreover, Plaintiff's argument that Investigator Sergeant Harden's credibility is a question of fact that should go to the jury is unavailing. Plaintiff states that Investigator Sergeant Harden does not have actual knowledge of whether a grievance was submitted, and any asserted knowledge is only based on reviewing a system that tracks grievances that the NCC staff file and log. (DE 122 at 8.) Plaintiff posits that this type of system is "subject to error or manipulation." (*Id*.) Plaintiff concludes that Investigator Sergeant Harden's affidavit "leads to the assumption and belief that through machinations of officers removing, discarding, and/or simply not filing grievances deliberately prevented plaintiff from taking advantage of the grievance process." (*Id*.)

However, a presumption of regularity attaches to state agency action. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("'[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties.'"); *United States Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) ("[A] presumption of regularity attaches to the actions of government agencies."); *see also Howard v. Dir., TDCJ-CID*, No. 11-CV-148, 2013 U.S. Dist. LEXIS 58903, at *13 (E.D. Tex. Feb. 6, 2013) ("[O]fficial [Texas Department of Criminal Justice Correctional Institutions Division] records are entitled to a

13

presumption of regularity and thus carry great evidentiary weight."). Plaintiff's conclusory arguments in an attempt to create doubt as to NCC's filing system are insufficient evidence of an actual error, manipulation, conspiracy or scheme that caused Plaintiff's grievances to not being filed. *See Cruz v. DeMarco*, No. 12-CV-4277 (JFB) (GRB), 2013 WL 4719086, at *7 (E.D.N.Y. Sept. 3, 2013) ("[A] conclusory claim that a grievance was lost or ignored is insufficient to overcome the PLRA's exhaustion requirement."); *Harris*, 2011 WL 5080089, at *4 (rejecting plaintiff's conclusory argument that the grievance committee "misplaced" his grievance, and finding that "there is no evidence that they took any action to inhibit Plaintiff's exhaustion of remedies.").

      **ii.**      **Procedurally Defective Grievance**

Even assuming arguendo that Plaintiff's handwritten letter is authentic and was submitted on April 20, 2013, the letter was procedurally defective, and thus, Plaintiff has nonetheless failed to exhaust his administrative remedies. "An untimely or otherwise procedurally defective administrative grievance also does not constitute proper exhaustion." *Snyder v. Whittier*, 428 F. App'x 89, 91 (2d Cir. 2011) (summary order) (internal quotation marks omitted). "[I]t is well settled that complaints and communications made outside of formal grievance procedures do not satisfy the PLRA's exhaustion requirement and informal complaints to prison officers or staff will not suffice." *Anderson v. Spizziota*, No. 11-CV-5663 (SJF) (SIL), 2016 U.S. Dist. LEXIS 18600, at *27 (E.D.N.Y. Feb. 12, 2016), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 44821 (E.D.N.Y. Mar. 31, 2016). "Th[e] exhaustion requirement is mandatory, and 'a court may not excuse a failure to exhaust, even to take [special] circumstances into account.'" *Stewart v. Cty. of Suffolk*, 16-CV-1871 (JMA) (SIL), 2018 U.S. Dist. LEXIS 198729, at *3 (E.D.N.Y. Nov. 21, 2018) (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)).

14

Courts have found that "a handwritten complaint that does not use the form fails to comply with the facility's procedural rules and thus such filing does not properly exhaust that inmate's remedies." *Anderson*, 2016 U.S. Dist. LEXIS 18600, at *27 (collecting cases). Here, Plaintiff's handwritten grievance is clearly not written on a grievance form in accordance with the Inmate Handbook. (*See* DE 113-6.) Plaintiff thus failed to exhaust his administrative remedies. *See Tucker*, 2014 WL 4175801, at *6 (finding that even if Plaintiff's handwritten form was authentic, he failed to use the facility's "standard grievance form," and thus, did not properly exhaust his administrative remedies.)

The Court finds that Defendants have carried their burden to show that Plaintiff failed to exhaust his administrative remedies.

**B.** *Unavailability of Administrative Remedies*

The remaining question is whether Plaintiff's failure to exhaust his administrative remedies is excused. Exhaustion of remedies is mandatory even where available administrative remedies are incapable of providing the relief sought. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). However, by the PLRA's own terms a plaintiff need not exhaust all administrative remedies, only those that can be said to have been "available" to them. *Id*. "A prisoner is thus required to exhaust only those grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at 633. (internal quotation marks omitted). Therefore, once the court has determined that an inmate failed to exhaust administrative remedies, it must discern whether any of these remedies were "unavailable" -- if so, the failure to exhaust is excused.

15

An administrative remedy is considered unavailable when (1) it functions as a "dead end" because officers are unable or consistently refuse to provide relief to inmates, (2) it is so opaque as to be unusable because despite its existence "no ordinary prisoner can discern or navigate it," or (3) "when prison administrators thwart inmates" from utilizing remedies through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 633.

The relevant inquiry is whether the grievance procedure was *available* to Plaintiff had he properly filed a grievance form. The Court finds that the procedure was available for several reasons. First, Plaintiff fails to articulate how filing a grievance form would have been a dead end. The alleged incident took place on April 19, 2013 and Plaintiff was discharged seven days later on April 26, 2013. (*See* DE 113-1 at ¶ 2; DE 113-8 at 33:24-34:15.) The Inmate Handbook provides that a response to a grievance would be provided within five days. (*See* DE 113-6 at 3-5.) Thus, had Plaintiff properly filed a grievance, he presumably would have received a response to his grievance before being discharged and transferred to another facility. There is no evidence before the Court to the contrary.

Even if Plaintiff filed the grievance and received no response, he could have appealed. *See Senear*, 2023 WL 4422805, at *5 ("[T]he law is well-settled that an inmate's failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies."). Thus, there is no reason to excuse Plaintiff's failure to exhaust his administrative remedies on this ground. *See Hargrove v. Riley*, No. 04-CV-4587, 2007 WL 389003, at *9 (E.D.N.Y. Jan. 31, 2007) (finding that plaintiff's transfer "did not excuse his previous failure to properly exhaust" since plaintiff "had ample opportunity to properly file his grievances and to appeal their results as required by [the facilities] procedures while he was imprisoned at [the facility].")

Second, the grievance procedure described in the Inmate Handbook cannot be fairly characterized as so opaque or unusable that no ordinary prisoner could discern or navigate it where Plaintiff himself alleges to have navigated and utilized it to file a grievance. *Cf. Senear*, 2023 WL 4422805, at *5 (noting that plaintiff had previously navigated the administrative process). Plaintiff incidentally argues that Defendants failed to provide him with writing supplies and grievance forms, which he asserts qualifies as an effort to thwart his exercise of the remedy. (DE 122 at 6.) However, Plaintiff alleges to have written a grievance dated April 20, 2023 after borrowing writing supplies from another inmate. (DE 122 at 7, 14.) Thus, any alleged effort by Defendants to thwart Plaintiff from filing a grievance by depriving him of writing supplies, was immaterial if Plaintiff's own account of events is deemed true.

Moreover, aside from a conclusory assertion that Defendants denied Plaintiff grievance forms (DE 122 at 7), Plaintiff provides no explanation, let alone evidence, to support that assertion. The Inmate Handbook states that "Grievance forms are available in the Inmate Law Library and during Inmate Council Meetings. The forms are also maintained in the housing area officer's station." (DE 113-6 at 5.) Plaintiff fails to explain why he was unable to obtain a grievance from any of these sources himself.

Third, as discussed *supra* III.B.i, Plaintiff's conclusory and speculatory allegations of a conspiracy to "through machinations of officers removing, discarding, and/or simply not filing grievances deliberately prevent[] plaintiff from taking advantage of the grievance process" are insufficient without more to create an issue of fact regarding the availability of the grievance process (DE 122 at 8). And Plaintiff also cannot estop Defendants from raising the issue of non-exhaustion on this basis. *See Heyliger v. Gebler*, 624 Fed. App'x. 780 (2d. Cir. 2015) (summary order) (holding that a prison guard's alleged disposal of a grievance form did not excuse

17

plaintiff's failure to exhaust because plaintiff had "failed to adduce any evidence that [the specific guards] were involved in the destruction of his grievance form.")

The undersigned finds that Plaintiff's failure to exhaust his administrative remedies is not excused under the circumstances presented here. Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Defendants' motion for summary judgment (DE 113) be granted.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on Defendant's counsel. Defendant is directed to serve a copy of this Report and Recommendation upon *pro se* Plaintiff and file proof of service within two business days of the date of this Report and Recommendation. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated: Central Islip, New York.
July 14, 2023

**RESPECTFULLY RECOMMENDED**,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge