FILED
CLERK

9/28/2023 4:48 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
RAHEEM EDWARDS,

                Plaintiff,                MEMORANDUM & ORDER
                                        13-CV-4345 (JS)(JMW)
    -against-

OFFICER DESTEFANO; SERGEANT
MCNAMARA; SERGEANT O'BRIEN;
OFFICER CARPIO; CORPORAL
ANDERSON; CORPORAL SCHNEIDER; and
OFFICER PICOLLI,

                Defendants.
-------------------------------X
APPEARANCES
For Plaintiff:      Raheem Edwards, pro se
                   06A6473
                   Sing Sing Correctional Facility
                   354 Hunter Street
                   Ossining, New York  10562

For Defendants:     Ian Bergstrom, Esq.
                   Office of the Nassau County Attorney
                   General Litigation & Appeals
                   One West Street, Suite 275g
                   Mineola, New York  11501

    SEYBERT, District Judge:

       Officer DeStefano, Sergeant McNamara, Sergeant O'Brien, Officer Carpio, Corporal Anderson, Corporal Schneider, and Officer Picolli (collectively "Defendants") move pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment (the "Motion"). (See ECF No. 113.)  By Report & Recommendation dated July 14, 2023 (the "R&R"), Magistrate Judge James W. Wicks ("Judge Wicks") recommended Defendants' Motion be granted. (See R&R, ECF No. 131, at 8-18.)  Raheem Edwards ("Plaintiff") filed timely objections to

the R&R. (See ECF No. 134.) For the following reasons, Plaintiff's objections to the R&R are OVERRULED, and the R&R is ADOPTED in its entirety.

BACKGROUND

The Court adopts the relevant factual background stated by Judge Wicks in his R&R, finding the R&R accurately summarizes the relevant facts pertinent to this case, which are incorporated herein.[1] (See id. at 2-5.) Similarly, the Court adopts Judge Wicks' recitation of the relevant procedural history, which is also incorporated herein. (Id. at 5-6.) See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) ("Because neither Plaintiff nor Defendants challenge the Magistrate Judge's recitation of the facts, and the Court finds no clear error in that recitation, the Court incorporates the 'Factual Background' and 'Procedural Background' sections of the Magistrate Judge's Report and Recommendation into this Order.") For the readers' convenience, the Court reiterates the following.

I.   Facts

"Plaintiff was an inmate at the Nassau County Correctional Center ("NCC") in East Meadow, New York." (R&R at 2.) Plaintiff alleges that on April 19, 2013, while waiting in

---

[1] Judge Wicks' summation of the relevant factual background was derived from the parties' respective Rule 56.1 Statements.

line to be let outside for recreation, an altercation ensued resulting in Defendants allegedly punching Plaintiff in the face, head, back, and side. (Id. at 2-3.) Plaintiff also alleges he was sprayed with pepper spray. (Id.) Additionally, Plaintiff complains he was further denied medical treatment by the Defendants after the physical confrontation, and that he was "denied showers, phone calls [hygiene] and toiletries"; similarly, Plaintiff asserts his "property was destroyed by [the] officers." (Id. at 3.) "Plaintiff was transferred from the NCC to a different facility on April 26, 2013." (Id.)

"The Department of the Nassau County Sherriff and the NCC promulgated an 'Inmate Handbook[,]'" which "became effective as of April 1, 2010." (Id.) Of import, the Inmate Handbook "sets forth an overview of the 'Grievance Procedure' applicable to the NCC." (Id. at 4.) Plaintiff received a copy of the Inmate Handbook during his incarceration at NCC. (Id.) The parties dispute "whether Plaintiff exhibited any behavior that may have caused or contributed to the excessive force or property loss issues . . . and whether Plaintiff submitted any grievances during his incarceration at NCC." (Id.)

II.  Procedural History

On August 29, 2022, Defendants filed their Motion. (See Motion; see also Support Memo, ECF No. 113-9, attached to Motion.) Plaintiff opposed Defendants' Motion. (See Opp'n, ECF No. 122.)

On April 27, 2023, this Court referred Defendants' Motion to Judge Wicks for a report and recommendation. (See Apr. 27, 2023 Elec. Order Referring Mot.) Judge Wicks issued his R&R on July 14, 2023, recommending Defendants' Motion be granted. (R&R at 18.) Plaintiff was advised objections to the R&R "must be filed with the Clerk of the Court within fourteen (14) days of service of" the R&R. (Id.) Plaintiff failed to file objections within this time. Nevertheless, the Court sua sponte extended the time for Plaintiff to file objections to August 22, 2023. (See Aug. 1, 2023 Elec. Order.) On August 4, 2023, Plaintiff filed his objections to the R&R, (see Obj., ECF No. 134.), to which Defendants responded on August 8, 2023. (See Response, ECF No. 135.)

III. Judge Wicks' R&R

In the R&R, after summarizing the material facts and procedural history of the action, Judge Wicks identified the rules governing summary judgment, together with the special solicitude rules courts generally extend to pro se litigants opposing such motions. (See R&R at 6-8.)

A. Exhaustion of Administrative Remedies

Next, Judge Wicks identified, "Defendants' motion for summary judgment [was] premised on Plaintiff's failure to exhaust his administrative remedies," and such failure "render[ed] [Plaintiff's] claims barred by the" PLRA. (Id. at 8.) Judge Wicks

noted Plaintiff's claims arose pursuant to Section 1983, and, after detailing the legal elements required to properly plead a Section 1983 claim, highlighted, "[p]ursuant to the PLRA, prisoners cannot bring an action under Section 1983 or any federal law 'until such administrative remedies as are available are exhausted.'"   (Id. (quoting 42 U.S.C. § 1997e(a)).)   Moreover, Judge Wicks highlighted "the PLRA establishes a mandatory exhaustion regime that forecloses judicial discretion over an unexhausted claim." (Id. at 9 (citing Senear v. Mininni, No. 21-CV-11131, 2023 WL 4422805, at *2 (S.D.N.Y. July 10, 2023)).)   The R&R notes the PLRA's exhaustion requirement "'applies to all inmate suits about prison life,'" including those which "'allege excessive force.'" (Id. (quoting Angulo v. Nassau County, 89 F. Supp. 3d 541, 549 (E.D.N.Y. 2015)).)   Compliance with the PLRA's exhaustion requirement requires prisoners to "utilize the State's grievance procedures, regardless of whether the relief sought is offered through those procedures." (Id.)   To determine whether a prisoner has complied with the PLRA, the R&R states "courts 'look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures.'"   (Id.)

Since administrative exhaustion is an affirmative defense, Judge Wicks next outlined the "defendant bears the burden of establishing a plaintiff's failure to exhaust administrative remedies." (Id. (citing Hubbs v. Suffolk County Sherriff's Dep't,

788 F.3d 54, 59 (2d Cir. 2015)).)  To meet this burden, a defendant must "point[] to legally sufficient source[s] such as statutes, regulations, or grievance procedures, that a grievance process exists and applies to the underlying dispute." (Id.)  However, the R&R further recognizes "[e]ven where a defendant meets this burden, 'administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact.'" (Id. at 9-10.)

Next, Judge Wicks determined "[t]he threshold question of exhaustion under the PLRA is for the court to decide, even if there exist disputed issues of fact." (Id. (citing Messa v. Goord, 652 F.3d 305, 309 (2d Cir. 2011)).)  Consequently, turning to Defendants' Motion, Judge Wicks found Plaintiff was familiar with, and received, the Inmate Handbook during his incarceration which detailed "numerous ways a prisoner [could] report the use of excessive force, outline[d] the general grievance procedure, and explain[ed] the appeals process." (Id. at 10.)  Specifically, Judge Wicks stated the Inmate Handbook detailed the following grievance procedure:

> [t]he Grievance Procedure dictates that an inmate must fill out a grievance form within five (5) days of the act or occurrence leading to the grievance and within five (5) business days of receipt of a grievance, the Grievance

> Coordinator will issue a written finding. If the inmate does not agree with the decision, the Inmate Handbook details the process for the inmate to appeal, first to the Chief Administrative Officer, then to the New York State Commission of Correction's Citizens Policy and Complaint Review Council. The Inmate Handbook also explicitly states that an inmate may file a grievance if the inmate believes the corrections staff have used excessive force.

(Id. (quoting Trotman v. Sposato, No. 18-CV-2711, 2021 U.S. Dist. LEXIS 259052, at *15 (E.D.N.Y. Aug. 24, 2021).)  The R&R explains that Plaintiff claims he exhausted his administrative remedies by filing two grievances, but Defendants argue there was no record of any such submissions, relying upon the Declaration of Investigator Sergeant Harden ("Harden") for this proposition.  (Id. at 11.)  In resolving this question, Judge Wicks concluded Plaintiff failed to follow the grievance procedure.  (Id.)

### 1. Plaintiff's Purported Grievances

In determining Plaintiff failed to submit a procedurally proper grievance, Judge Wicks credited Harden's Declaration finding it "reflects that Plaintiff 'did not submit grievances to the Nassau County Correctional Center challenging the alleged excessive force involving the [County],' property loss, and other conditions of confinement referenced throughout Plaintiff's complaint."  (Id. (citing Harden Decl., ECF No. 113-7, attached to Motion; Defs'. R. 56.1 Stmt., ECF No. 113-1, ¶ 21, attached to Motion).)

The R&R also highlights several inconsistencies in Plaintiff's claim that he filed written grievances on April 20, and April 23. Specifically, the R&R notes, "[t]he 'Chronological Order of Events' portion of Plaintiff's complaint . . . only notes that he submitted a grievance on April 22, 2023." (Id. at 11-12.) Conversely, the R&R highlights Plaintiff's Opposition to Defendants' Motion "mentions that he placed the grievances 'in the box on April 22, 2013, and April 25, 2013." (Id. at 12.) Likewise, the R&R emphasizes that during his deposition, when asked whether he submitted a grievance with respect to the alleged incidents, Plaintiff "only referenced one grievance written on April 20, 2013." (Id. (citing Edwards Dep. Tr., ECF No. 113-8, at 31:21-33:20, attached to Motion).)

Additionally, Judge Wicks pointed out "the one handwritten grievance provided by Plaintiff is dated April 20, 2023" and "appears to be a scanned copy of a paper addressed to the 'Grievance Office' about 'Assault, Loss of Property.'" (Id. (quoting Opp'n at 14).) Judge Wicks stated "this letter . . . notes not only the excessive force incident but also the loss of his property, which he writes he learned about from one of the officers." (Id.) Judge Wicks reiterated, Plaintiff's claims in his letter are at odds with Plaintiff's Chronology of Events which states Plaintiff did not discover his property loss until April 26, 2023, which was his date of discharge. (Id.)

Furthermore, the R&R emphasizes Plaintiff failed to provide or allege he had received a "'grievance receipt,' which according to the Inmate Handbook is 'issued for each grievance received by the Grievance Unit[.]'" (Id. (quoting Inmate Handbook, ECF No. 113-6, at 5, attached to Motion).)

Plaintiff next argued Judge Wicks should not credit Investigator Sergeant Harden's Declaration because Harden did "not have actual knowledge of whether a grievance was submitted"; instead, "any asserted knowledge [was] only based on reviewing a system that tracks grievances that the NCC staff file and log." (Id. at 13.)  Such a system was prone to error and manipulation, according to Plaintiff.   (Id.)   The R&R concluded Plaintiff's arguments in this regard were unavailing.   (Id.)   Specifically, Judge Wicks emphasized "a presumption of regularity attaches to state agency action."   (Id. (citing United States v. Armstrong, 517 U.S. 456, 464 (1996) (further citation omitted)).))   Further, Judge Wicks found Plaintiff's arguments to be "conclusory" and "an attempt to create doubt as to NCC's filing system" without providing evidence of "an actual error, manipulation, conspiracy or scheme that caused Plaintiff's grievances to not [be] filed." (Id. at 14.)

## 2. Procedural Defects

Finally, the R&R assumed *arguendo* "that Plaintiff's handwritten letter [was] authentic and was submitted on April 20, 2013," yet nevertheless concluded that "the letter was procedurally defective, and thus, Plaintiff . . . nonetheless failed to exhaust his administrative remedies." (Id. at 14.)   In support of this finding, Judge Wicks cited Second Circuit precedent establishing "a handwritten complaint that does not use the form fails to comply with the facility's procedural rules and thus such filing does not properly exhaust that inmate's remedies." (Id. at 15 (quoting Anderson v. Spizziota, No. 11-CV-5663, 2016 WL 11480707, at *8 (E.D.N.Y. Feb. 12, 2016) (collecting cases), report and recommendation adopted, 2016 WL 1275044 (E.D.N.Y. Mar. 31, 2016)).)

## B. Unavailability of Administrative Remedies

Having determined Plaintiff failed to exhaust his administrative remedies, Judge Wicks next determined whether Plaintiff's failure could be excused.   The R&R provides:

> [a]n administrative remedy is considered unavailable when (1) it functions as a 'dead end' because officers are unable or consistently refuse to provide relief to inmates, (2) it is so opaque as to be unusable because despite its existence 'no ordinary prisoner can discern or navigate it,' or (3) 'when prison administrators thwart inmates' from utilizing remedies through 'machination, misrepresentation, or intimidation.'

(Id. at 16 (quoting Ross v. Blake, 578 U.S. 632, 633 (2016)).)
Likewise, the R&R emphasized, "[t]he relevant inquiry is whether
the grievance procedure was available to Plaintiff had he properly
filed a grievance form." (Id. (emphasis in original).) Judge
Wicks concluded "the procedure was available to Plaintiff for
several reasons." (Id.) First, the R&R points out "[t]he alleged
incident took place on April 19, 2013[,] and Plaintiff was
discharged seven days later on April 26, 2013." (Id.) Since the
Inmate Handbook provides that a response will be provided within
five business days, had Plaintiff promptly and properly filed a
grievance, "he presumably would have received a response to his
grievance before being discharged and transferred to another
facility." (Id.) Similarly, the R&R notes, even if Plaintiff
received no response within the allotted period, he could have
appealed. (Id.) Second, Judge Wicks found the grievance procedure
could not be characterized "as so opaque or unusable that no
ordinary prisoner could discern or navigate it where Plaintiff
himself alleges to have navigated and utilized it to file a
grievance." (Id. at 17.) Finally, Judge Wicks determined
Plaintiff's argument that he was denied writing supplies and
grievance forms was "immaterial if Plaintiff's own account of
events is deemed true[,]" since Plaintiff alleges he was able to
borrow writing supplies from another inmate and that he filed a

written grievance on April 20.[2]  Likewise, to the extent Plaintiff made conclusory and speculatory allegations of a conspiracy to deliberately prevent him from taking advantage of the grievance process, Judge Wicks determined such allegations were "insufficient without more to create an issue of fact regarding the availability of the grievance process."  (Id.)

DISCUSSION

## I.  Legal Standard

The Court adopts the "Legal Standard" stated by Judge Wicks in his R&R, (see id. at 6-8), finding the R&R accurately summarized the relevant law pertaining to summary judgment.  The Court adds the following legal principles applicable to its analysis of Plaintiff's objections to the R&R.

### A. R&R

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general

_____

[2] On the issue of grievance forms, the R&R further emphasized Plaintiff "provides no explanation, let alone evidence" to support his assertion that Defendants denied him access to grievance forms. (R&R at 17.)  Indeed, as noted by the R&R, Plaintiff offers no explanation why he was unable to obtain grievance forms for himself either from the law library or during inmate council meetings -- two locations the Inmate Handbook outlines where grievance forms are kept.  (Id.)

objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); FED. R. CIV. P. 72(b)(3).  The Court need not review the findings and conclusions to which no proper objection has been made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).

II. Analysis

Plaintiff raises five objections to Judge Wicks' R&R. First, Plaintiff argues Judge Wicks' determination he failed to exhaust his administrative remedies improperly attacked Plaintiff's credibility, something which cannot be decided on summary judgment. (Obj. at 4.)  Second, Plaintiff contends he complained orally to staff about the excessive force and property loss claims during his disciplinary hearing, and this was permissible pursuant to the procedures outlined in the Inmate Handbook. (Id. at 6.)  Third, Plaintiff asserts "[t]he inconsistencies" highlighted in the R&R regarding Plaintiff's purported grievances "can be contributed to human error and an honest mistake in recollection." (Id.)  Likewise, Plaintiff faults the R&R for finding Sergeant Harden's affidavit was entitled to a "presumption of regularity." (Id. at 9-11.)  Fourth, Plaintiff objects to the R&R's determination his handwritten grievance was procedurally defective because it was not written on a formal

grievance form.  (Id. at 11-12.)  Finally, Plaintiff maintains he filed his grievance dated April 20 on April 22, 2013, but regardless, given the allotted response time of five days, and since he was discharged on April 26, there was no way for him to "have appealed any, if negative, response on April 27, 2013[,] or beyond."  (Id. at 12-13.)  Plaintiff avers then, that his transfer rendered any grievance process "a 'dead end' where no relief could be sought."  (Id. at 13.)

Turning to Plaintiff's objections, the Court finds them to be general and "mere reiterations of the arguments in [the] original papers that were fully considered, and rejected, by" the Magistrate Judge.  Out of the Blue Wholesale, LLC v. Pac. Am. Fish Co., Inc., No. 19-CV-0254, 2020 WL 7488072, at *2 (E.D.N.Y. Dec. 21, 2020) (quoting Rizzi v. Hilton Domestic Operating Co., Inc., No. 19-CV-1127, 2020 WL 6243713, at *2 (E.D.N.Y. Oct. 23, 2020) (collecting cases)).  Thus, the Court reviews Judge Wicks' analysis for clear error only.[3]

A. Whether Plaintiff Exhausted his Administrative Remedies Was a Threshold Issue for the Court to Determine Based Upon the Record Evidence

"Questions of fact with respect to whether an inmate has exhausted or is capable of exhausting administrative remedies are

---

[3] Even if the Court were to engage in a de novo review of Plaintiff's objections, for the reasons discussed herein, the result would be the same.

to be decided by the court and not the jury." Osborn v. Williams, 792 F. App'x 88, 90 (2d Cir. 2019) (citing Messa, 652 F.3d at 309); see also Messa, 652 F.3d at 309 ("Matters of judicial administration often require district judges to decide factual disputes that are not bound up with the merits of the underlying dispute. In such cases, the Seventh Amendment is not violated."). Only where "resolution of the exhaustion question at the summary judgment stage would run perilously close to resolving disputed issues of material facts on the Plaintiff's . . . substantive claim" do courts in this Circuit permit jury determination of the exhaustion issue. Sanchez v. Nassau County, No. 17-CV-7335, 2023 WL 2457855, at *21 (E.D.N.Y. Mar. 11, 2023); see also Rickett v. Orsino, No. 10-CV-5152, 2013 WL 1176059, at *23 (S.D.N.Y. Feb. 20, 2013), report and recommendation adopted, 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013) (finding the court could not decide the exhaustion-related factual issues in the case since "the facts pertaining to Plaintiff's exhaustion excuses are intertwined with the merits of his underlying claims" such that, "for the Court to make a determination as to whether Plaintiff's failure to exhaust should be excused, the Court would necessarily have to determine whether Plaintiff was assaulted and whether he faced retaliation when he sought to file a grievance").

Here, it was not clearly erroneous for Judge Wicks to decide Plaintiff failed to exhaust his administrative remedies.

Plaintiff pled, and argued, he filed two grievances, the analysis of Plaintiff's allegations on the exhaustion-related issues were extraneous from the merits of Plaintiff's excessive force and property loss claims and simply required review of whether Plaintiff had complied with the procedural rules outlined in the Inmate Handbook.   Likewise, in so determining, Judge Wicks was required to consider all the record evidence.   See Brooks v. Mullen, No. 14-CV-6690, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) ("In evaluating whether Plaintiff complied with the exhaustion requirement or whether that exhaustion requirement should be excused, the Court must determine issues of [] law and credibility." (emphasis added)); see also Brown v. Dubois, No. 15-CV-1515, 2018 WL 2078823, at *5 (N.D.N.Y. Apr. 10, 2018) ("It is for the Court to determine issues of law and credibility in deciding whether an inmate has complied with the exhaustion requirements of the [PLRA]."). In making his findings, Judge Wicks analyzed:  (1) inconsistencies between Plaintiff's deposition testimony and his Chronology of Events; (2) Plaintiff's failure to produce evidence of a grievance receipt; (3) Plaintiff's failure to provide a copy of any formal grievance; and (4) competing testimonial evidence from Hayden, whose review of NCC's records revealed Plaintiff failed to file any grievances during his incarceration.  Plaintiff's failure to provide evidence refuting Harden's sworn declaration that NCC had no record of any grievances

was sufficient to find Plaintiff failed to exhaust his administrative remedies. See Whittington v. Ponte, No. 16-CV-1152, 2020 WL 2750372, at *7 (S.D.N.Y. May 27, 2020) ("Where a plaintiff provides no evidence that a grievance was actually filed, while defendant supplies evidence of searches of files and databases that failed to turn up that grievance, plaintiff's allegations are insufficient to satisfy the exhaustion requirement." (quoting Anderson, 2016 WL 11480707, at *17)).

B. Failure to File a Grievance on the Formal Grievance Form Rendered Plaintiff's Handwritten Letter Procedurally Defective and his Alleged Oral Complaints Were Equally Insufficient

Similarly, Judge Wicks' determination that Plaintiff's handwritten letter was procedurally defective, and thus, could not excuse Plaintiff's failure to file a formal grievance was not clearly erroneous. Indeed, and as cited by Judge Wicks, "[s]ince the NCCC procedures expressly require use of the grievance form without exception, filing a handwritten complaint that does not use the form fails to comply with the facility's procedural rules and thus such filing does not properly exhaust that inmate's remedies." Anderson, 2016 WL 11480707, at *8 (emphasis added) (collecting cases).[4]

_____

[4] Plaintiff's argument that his April 20 Letter was sufficient in place of a formal grievance is misplaced in that it cites to N.Y.C.R.R. § 701.5(a)(1) for the proposition that if a grievance form is unavailable "a complaint may be submitted on plain paper." (Obj. at 11.) See Abney v. County of Nassau, 237 F. Supp. 2d 278,

Likewise, "the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." Coley v. Garland, No. 19-CV-0382, 2023 WL 346242, at *6 (N.D.N.Y. Jan. 20, 2023) (quoting Timmons v. Schriro, No. 14-CV-6606, 2015 WL 3901637, at *3 (S.D.N.Y. June 23, 2015)). Thus, to the extent Plaintiff argues his alleged oral disclosure of the excessive force incident and property loss claims obviated his need to file a grievance, Plaintiff is mistaken. See Thomas v. Delaney, No. 17-CV-1023, 2019 WL 4247807, at *11 (N.D.N.Y. Aug. 13, 2019) ("The mere utterance of [] claims during the course of a disciplinary hearing does not obviate the requirement that [an inmate] file a grievance setting forth a claim which is based upon the same or closely related facts." (quoting Bennett v. Fischer, No. 09-CV-1236, 2010 WL 5525368, at *6 (N.D.N.Y. Aug. 17, 2010) (alterations in original))).

---

283 (E.D.N.Y. 2002) (finding New York State Procedure was inapplicable where the Nassau County Inmate Handbook provided the procedure which governed issues related to plaintiff's exhaustion of NCC's grievance procedures; moreover, determining "[i]n view of the fact that Nassau County has chosen to fashion its own grievance procedure (which it is free to do) it [was] disingenuous for Defendants to argue that a single provision of a different procedure should be grafted on to the Nassau County procedure when it [suited] the [Defendants'] litigation position"); see also Walker v. County of Nassau, No. 15-CV-4794, 2016 WL 11481725, at *4 n.2 (Aug. 8, 2016) ("the grievance procedure in place at the NCCC is separate from the grievance procedure implemented by the New York State Department of Correction and Community Supervision.").

C. Plaintiff's Transfer Did Not Prevent Him from Accessing NCC's Grievance Process; so, his Failure to Exhaust is Not Excused

The exhaustion requirement in the PLRA "hinges on the 'availab[ility]' of administrative remedies." Ross, 578 U.S. at 642. As such, "[a]n inmate, . . . must exhaust available remedies, but need not exhaust unavailable ones." Id. An administrative procedure will be treated as unavailable where: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Williams v. Priatno, 829 F.3d 118, 123-24 (2d Cir. 2016) (internal citations omitted). "[M]any courts have found that where a plaintiff had an opportunity to meaningfully pursue the grievance while incarcerated at the facility where the grievance arose, the failure to exhaust those remedies was not excused by the plaintiff's transfer to a different facility." Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 433 (E.D.N.Y. 2010). "The rationale for not granting an exception to administrative exhaustion in these cases was that a plaintiff should not be 'rewarded' for failing to participate in [the] grievance procedure before being

transferred." Id. (citing Santiago v. Meinsen, 89 F. Supp. 2d 435, 441 (S.D.N.Y. 2000)).

Contrary to Plaintiff's objections, Judge Wicks' determination that Plaintiff should not be excused from his failure to exhaust his administrative remedies due to his transfer was not clearly erroneous.[5]  Indeed, the alleged incident took place on April 19, 2013.  The Inmate Handbook provides a grievance must be filed "within five (5) days of the date of the act or occurrence leading to the grievance."  Plaintiff was not transferred from NCC until April 26, 2013, after the time to file a procedurally proper grievance had elapsed.  Plaintiff had sufficient time to avail himself of NCC's grievance procedure and, based upon the record evidence, failed to do so.[6]  Courts have found, under such circumstances, failure to exhaust should not be excused.  See Miles

---

[5]  Judge Wicks previously determined Plaintiff's contention regarding the unavailability of grievance forms was conclusory and unsupported by any evidence. (See R&R at 17.)  Finding no contrary evidence, upon its own review, the Court likewise agrees with the Magistrate Judge that Plaintiff should not be excused from his failure to exhaust on these grounds.

[6] The Court likewise finds Plaintiff's argument, that the grievance procedure was a "dead end" because he could not have appealed a hypothetical negative response before being transferred is unavailing.  The first step of the grievance process was available to Plaintiff, and he had time to avail himself of it prior to his transfer; Plaintiff failed to do so.  To argue after the fact that the process was unavailable to him because he could not have appealed a negative response is purely speculative, and, if the Court agreed, would only serve to reward Plaintiff for skipping the first step in the grievance procedure.

v. County of Broome, No. 04-CV-1147, 2006 WL 561247, at *6 (N.D.N.Y. Mar. 6, 2006) ("Plaintiff was not transferred out of the BCCF until after he had the opportunity to file a grievance. Because Plaintiff did not timely file a grievance before his transfer and he had the opportunity to do so, he failed to exhaust his administrative remedies"); accord Louis-Charles v. Baker, No. 16-CV-1417, 2018 WL 5728054, at *5 (N.D.N.Y. July 30, 2018) (finding "plaintiff had sufficient time to file a grievance at JCCF regarding [a] July 27, 2016[,] incident prior to his transfer," where such transfer took place on August 4, 2016, and the grievance procedure provided plaintiff five days to file a grievance); cf Hartry, 755 F. Supp. at 433 (finding, where Inmate Handbook permitted an inmate to file a grievance within five days of the incident aggrieved, inmate's transfer within two days of the incident deprived him of "a meaningful opportunity to pursue [his] administrative remedy while at the SCCF").

To the extent not explicitly addressed, the Court has considered the remainder of Plaintiff's arguments and finds them to be without merit.  Finding no error -- clear or otherwise -- in Judge Wicks' R&R, Plaintiff's objections are OVERRULED in their entirety.

<u>CONCLUSION</u>

For the stated reasons, Plaintiff's objections are OVERRULED, the R&R is ADOPTED in its entirety, and Defendants' Summary Judgment Motion is GRANTED. The Clerk of the Court is directed to mark this case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 28, 2023
       Central Islip, New York